**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNION HOME MORTGAGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 1:24-cv-2147 |
| vs. | ) | |
| | ) | |
| EDWIN RINEHART, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff Union Home Mortgage ("Union Home"), by counsel, and for its Complaint for Injunctive Relief and Damages against Defendant, Edwin Rinehart ("Rinehart"), alleges and states as follows:

**NATURE OF THE ACTION**

1. Union Home brings this action against Rinehart, its former employee, for Rinehart's breaches of his contractual covenants and common-law duties to Union Home.

**PARTIES**

2. Union Home is an Ohio corporation with its principal place of business in Strongsville, Ohio.

3. Upon information and belief and at all relevant times, Rinehart is a resident of Texas.

## JURISDICTION AND VENUE

4. Jurisdiction is proper in federal court pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because the Union Home employment agreement that Rinehart signed on or about February 26, 2024 (the "Agreement") provides for personal jurisdiction in Ohio and requiring that all disputes pertaining to the Agreement be filed in state or federal courts in Ohio, a provision Rinehart agreed to. A true and accurate copy of the Agreement is attached hereto, incorporated herein, and marked as **Exhibit A**.

## FACTUAL BACKGROUND

*Rinehart's employment and contractual obligations to Union Home.*

6. Paragraphs 1-5 are incorporated herein by reference as if fully restated herein.

7. Union Home is in the business of providing homeowners and prospective home buyers with mortgage and refinance loan products.

8. On or about February 26, 2024, Rinehart was hired by Union Home.

9. As part of the hiring process, Union Home and Rinehart entered into the Agreement.

10. Union Home invests significant time, effort, and resources into recruiting, training, and retaining its branch managers and loan officers.

11. Union Home takes reasonable measures to keep this information secret and out of its competitors' hands. Union Home does so, for example, by requiring employees (such as Rinehart) to sign employee agreements similar to the Agreement.

12. As a loan officer, Rinehart was given access to and was in a position of trust with regard to the goodwill between Union Home and its customers, prospective customers, and referral sources.

13. When Rinehart began working for Union Home, his job duties included generating and originating loans as he was a team lead loan officer for Union Home. In addition, Rinehart was responsible for hiring, training, and directing the retail sales team to achieve growth and production goals while operating within Union Home's specific policies and procedures.

14. Rinehart acquired confidential, proprietary, and trade secret information regarding, among other things, Union Home's customers, prospective customers, and referral sources, as well as Union Home's sales and marketing strategies, lending practices, and risk tolerances.

15. Rinehart was a trusted employee of Union Home, who was given access to the goodwill Union home has with its customers, prospective customers, and referral sources, as well as Union Home's confidential and trade secret information, including confidential information about Union Home's customer, prospective customers, and referral sources.

16. Union Home has a legitimate business interest in protecting its confidential and or trade secret information, goodwill, and customer relations.

17. In the Agreement, Rinehart acknowledged that:

> **Legitimate Interests.** Due to the nature of the business of the Company, certain employees, including Employee, are provided access to confidential and/or trade secret information that is proprietary to the Company. Likewise, via their employment, certain employees, including Employee, are introduced to, given the opportunity to develop personal contacts with, and actually develop an advantageous familiarity with the Company's customers, prospective customers, and referral sources. If this confidential or "trade secret" information or these contacts and familiarity were made available to the Company's competitors or other individuals outside the Company, or otherwise used against the Company's interests, it would provide a competitor with an unfair competitive advantage and likely result in a loss of business or competitive position for the Company and/or harm the Company's goodwill and investment in developing and maintaining its business relationships. The parties expressly agree that the terms of this Agreement are reasonable, enforceable, and necessary to protect the Company's interests and will not prevent Employee ability from earning a livelihood.

(Ex. A at 4.)

18. With respect to confidential information, Rinehart agreed as follows:

> Confidential Information. Employee shall not (i) use any Confidential Information for any purpose other than on behalf of the Company, or (ii) directly or indirectly disclose, divulge, reveal, report, publish or transfer, for any purpose whatsoever, any Confidential Information to any third party. Employee agrees that all Confidential Information, however stored or memorialized, is the sole property of the Company and shall be immediately returned to the Company upon request or the termination of Employee's employment, whichever comes first, and no copies shall be retained by Employee. For purposes of this Agreement, "Confidential Information" shall include confidential or proprietary information or trade secrets of the Company, including, but not limited to, written or electronic information: (i) disclosed to Employee or known by Employee as a result of his or her employment, (ii) which is not generally known, and (iii) which relates to or concerns the Company's customers, prospective customers, referral sources, personnel, pipelines, customer relationship management databases, business, technology, information systems, computer programs, software, suppliers, vendors, sales, marketing or finances. Confidential Information shall also include all information and matters specifically designated as proprietary and/or confidential by the Company's customers, referral sources, or other business partners.

(*Id.* at 5.)

19. In almost all employee agreements, Union Home seeks to protect its legitimate business interests by having employees (such as Rinehart) agree to limited non-solicitation provisions to further protect its confidential information, which includes customer lists, pricing, and referral sources.

20. In the Agreement, Rinehart agreed to the following limited non-solicitation provisions concerning customers:

> Limited Non-Solicitation of Customers. During the Restricted Period and for one (1) year thereafter, Employee will not, on behalf of themselves or a Competitive Entity, directly or indirectly, solicit or divert (or attempt to solicit or divert) or accept competitive business from any customer or identified prospective customer of the Company: (i) with whom Employee had contact; or (ii) about whom Employee obtained or had access to Confidential Information, in conjunction with their employment in the thirty-six (36) months preceding the termination of Employee's employment with the Company.

(*Id.*)

21. The Agreement required Rinehart to not use any non-approved devices or accounts to conduct business on behalf of Union Home. Specifically, the Agreement's Electronic Resources provisions indicates:

> Electronic Resources. Employee agrees not to use any electronic resources of the Company for any business purpose other than Company-approved business. Such electronic resources include, but are not limited to: devices, networks, email accounts, cloud storage, apps and software provided or made accessible by the Company. Furthermore, Employee agrees to refrain from using any devices, networks, email accounts, cloud storage, apps and software that have not been provided, made accessible, or specifically approved by the Company for Company business. By way of example, Employee agrees not to send information regarding the Company's customers or prospective customers to an external email account, store such information on a personal cloud storage account, or download such information to a flash or external hard drive. This provision is in addition to and not in lieu of Company policies on this subject. Finally, Employee consents to receive business-related calls and text messages on their cellular telephone, whether auto-generated or otherwise, unless and until they provide the Company's Human Resources Department with a written revocation of that consent.

(*Id.* at 7.)

22. When Rinehart executed the Agreement, he accepted a one-time contingent bonus and a guarantee against commissions, which totaled $85,000.00 (collectively, the "Bonus"). The Bonus was conditional in the sense that if Rinehart did not remain employed with Union Home for two (2) years he would be required to repay a substantial portion of the Bonus.

23. The Agreement further provides a vesting schedule and a provision requiring repayment of the unearned Bonus in the event Rinehart did not remain employed with Union Home for two (2) years:

> Repayment of Unearned Bonus. Employee agrees to repay the Bonus to the Company in the following circumstances and according to the following terms:
>
> a. Repayment Due to Termination of Employment. If Employee's employment with the Company ends for any reason within two (2) years of the Effective Date, Employee agrees to repay the entire Bonus to the Company. For the avoidance of doubt, Employee will have earned the entire Bonus if they remain employed by the Company for more than two (2) years as of the Effective Date.
>
> b. Terms of Repayment. If Employee's employment ends for any reason and they must repay part or all of the Bonus pursuant to Paragraph 4(a) above, Employee agrees they will do so by no later than fifteen (15) days after the employment termination, and that any outstanding balance on such repayment obligation is delinquent and immediately collectable as of the sixteenth (16th) day after the employment termination. Employee also agrees that if the amount due is not repaid in full prior to the sixteenth (16th) day after the effective date of the employment termination and the Company engages in collection efforts to obtain repayment in full, Employee will pay the Company all such costs and fees associated with those efforts, including the Company's legal fees.

(*Id.* at 4.)

24. The Agreement is a valid and enforceable contract between Union Home and Rinehart.

25. Union Home performed its material obligations under the Agreement.

26. Rinehart owed and continues to owe legal and contractual obligations to Union Home pursuant to the Agreement.

**Rinehart sends Union Home borrower information to his personal email account.**

27. Union Home recently conducted a review of Rinehart's company-issued email account and found a variety of misconduct related to Union Home's proprietary and confidential

information, including Rinehart sending Union Home's borrower and perspective borrower information to his personal email account.

28. The information Rinehart improperly sent to himself and stored on a personal email account is precisely the type of confidential and proprietary information he would need to solicit of Union Home's customers, prospective customers, and referral sources for his own or any subsequent employer's benefit.

29. The Agreement's confidentiality and electronic resources provisions specifically provide that customer information is confidential and is not to be used for any purpose other than for Union Home's business purposes, and specifically bars the use of personal accounts to convey this information. (*Id.* at 5, 7.)

30. The information Rinehart improperly sent to a personal email account belongs to Union Home and is confidential and constitutes trade secret information.

31. There was no legitimate Union Home business purpose for Rinehart to improperly utilize his personal email account to house or transact in confidential and proprietary information in violation of the Agreement.

32. Union Home believes that Rinehart is using Union Home's confidential and trade secret information to close loans or attempt to close loans for his own or for a direct competitor's benefit.

***Rinehart voluntarily resigns from Union Home without repaying his Bonus.***

33. Rinehart voluntarily resigned from his employment with Union Home on August 2, 2024 — just over 5 months after he began working for Union Home.

34. Rinehart would have needed to work for Union Home until February 26, 2026, for the Bonus to fully vest.

35. Pursuant to the Agreement's repayment provisions, Rinehart is required to pay the entire bonus back to Union Home.

36. As a result, Rinehart owed Union Home at least $76,648 of the Bonus.

***Union Home makes a good faith, but unsuccessful attempt to secure repayment of the unearned portion of the Bonus.***

37. The Agreement required that Rinehart repay any unearned portion of the Bonus within fifteen (15) days after he voluntarily resigned. Rinehart resigned from his employment with Union Home on August 2, 2024.

38. Rinehart was required to repay any unearned portion of the Bonus by August 17, 2024. Rinehart failed to do so.

39. On or about September 11, 2024, Union Home's counsel sent a letter to Rinehart in an attempt to collect the unearned portion of the Bonus Rinehart owes to Union Home. A true and accurate copy of the letter is attached hereto, incorporated herein, and marked as **Exhibit B**.

40. Specifically, the letter indicates:

> As your entitlement to the Bonus was contingent upon your continued employment—which you voluntarily resigned—you are now legally obligated to repay a significant portion of it. The total amount of the Bonus was $85,000. While the Agreement does not require as much, Union Home will exclude amounts attributable to taxes from the amount to be repaid. After this reduction, the final portion of the Bonus owed to Union Home is $76,648. Per the terms of the Agreement, you were to repay this amount in full within 15 days of your resignation, but have failed to do so.

(Ex. B, at 1.)

41. To date, Rinehart has not repaid Union Home for the unearned portion of the Bonus.

42. Union Home has suffered financial loss as Rinehart has unlawfully retained an unearned amount of the Bonus, totaling at least $76,648.

*Litigation is necessary to protect Union Home's legitimate interests and to recover the unearned portion of the Bonus.*

43. Union Home has been unsuccessful in its attempt to recover the unearned portion of the Bonus owed to it by Rinehart.

44. Union Home believes its confidential information and trade secrets are being used for the benefit of Rinehart and/or a direct competitor as Union Home's investigation into Rinehart's Union Home email account revealed confidential information and trade secrets being sent to Rinehart's private email account.

45. Union Home has determined it has no other option outside of filing this lawsuit.

46. Paragraph 17 of the Agreement that Rinehart voluntarily entered into provides that Rinehart would be responsible for Union Home's reasonable attorneys' fees incurred in conjunction with a successful suit to enforce the Agreement. (Ex. A, at 6.)

47. Union Home has been required to retain the services of its undersigned counsel for the purposes of protecting its interests under the Agreement and has incurred and will continue to incur attorney fees in an amount yet to be determined as a result of Rinehart's multiple breaches of the Agreement.

48. Union Home has suffered financial loss as a result of Rinehart's actions.

**COUNT I: BREACH OF CONTRACTUAL DUTY OF CONFIDENTIALITY**

49. Paragraphs 1-48 are incorporated herein by reference as if fully stated herein.

50. Union Home and Rinehart entered into the Agreement on or about February 26, 2024.

51. The Agreement is a valid and enforceable contract between Union Home and Rinehart.

52. At the time Rinehart resigned from his employment with Union Home, he was improperly sending Union Home's confidential information and/or trade secrets to a personal email account in violation of the Agreement.

53. On information and belief, Rinehart continues to have access to the account containing Union Home's confidential information and trade secrets.

54. On information and belief, Rinehart has and/or intends to use or disclose Union Home's confidential information and trade secrets to its detriment.

55. Specifically, prior to leaving Union Home, Rinehart improperly stored personally identifiable information related to customers, prospects, or referral sources on his personal email account.

56. Rinehart's actions breached his contractual confidentiality obligations to Union Home, as reflected in Paragraph 10 of the Agreement wherein he agreed not to use Union Home's confidential information and trade secrets for any purpose other than on behalf of Union Home, and further, agreed to not disclose, divulge, reveal, report, publish, or transfer said information for any purpose whatsoever.

57. The breach by Rinehart of his confidentiality obligations pursuant to the Agreement has caused and will continue to cause injury, loss, and damage to Union Home and continuation of these breaches will result, unless restrained, in immediate and irreparable injury, loss, and damage to Union Home.

58. Union Home seeks damages for Rinehart's breach of the confidentiality provision in an amount to be established at trial, reasonable attorney's fees incurred in conjunction with the enforcement of the Agreement, an order requiring Rinehart to comply with the terms of the Agreement, and any other relief just and proper in the circumstances.

**COUNT II: BREACH OF CONTRACTUAL DUTY OF REPAYMENT OF THE BONUS**

59. Paragraphs 1-58 are incorporated herein by reference as if fully restated herein.

60. The Agreement contained a Bonus, totaling of $85,000.

61. The Bonus was to be repaid in its entirety if Rinehart did not remain employed by Union Home for two (2) years. Rinehart would have needed to work for Union Home until February 26, 2026, for the Bonus to fully vest.

62. Rinehart voluntarily resigned from his employment with Union Home on August 2, 2024.

63. Rinehart did not remain employed by Union Home for the requisite amount of time for the Bonus to vest.

64. Rinehart has not repaid to Union Home the portion of the Bonus owed to Union Home pursuant to the Agreement.

65. The breach by Rinehart of his repayment obligations pursuant to the Agreement has caused Union Home financial harm.

66. Union Home seeks damages for Rinehart's failure to repay the Bonus in an amount not less than $76,648, reasonable attorney's fees incurred in conjunction with the enforcement of the Agreement, and any other relief just and proper in the circumstances.

**COUNT III: BREACH OF COMMON LAW DUTY OF LOYALTY**

67. Paragraphs 1-66 are incorporated herein by reference as if fully restated herein.

68. While employed by Union Home, Rinehart owed a common law duty of loyalty to Union Home.

69. Rinehart's employment with Union Home ended upon his resignation on August 2, 2024.

70. While employed by Union Home, Rinehart was required to put forth his best efforts on behalf of the company. Rinehart failed to do so when he sent Union Home's confidential information and trade secrets, including his retention of confidential customer, prospect, and referral source information to his personal email account. Rinehart further failed to put forth his best efforts on behalf of the company through his use of an impermissible account to house the confidential information and trade secrets he sent to the account.

71. Rinehart's actions breached his common law duty of loyalty to Union Home.

72. Rinehart's breaches of his common law duty of loyalty have caused injury, loss, and damage to Union Home.

73. Union Home seeks damages for Rinehart's breach of the common law duty of loyalty in an amount to be established at trial, compensatory and punitive damages, reasonable attorney's fees and any other relief just and proper in the circumstances, .

## COUNT IV: UNJUST ENRICHMENT

74. Paragraphs 1-73 are incorporated herein by reference as if fully restated herein.

75. The Agreement contained a contingent bonus, totaling $85,000.

76. Rinehart and Union Home agreed that a significant portion of the contingent bonus was to be repaid if Rinehart did not remain employed by Union Home for two (2) years. Rinehart would have needed to work for Union Home until February 26, 2026, for the bonus to vest.

77. Rinehart voluntarily resigned from his employment with Union Home on August 2, 2024.

78. Rinehart did not remain employed by Union Home for the requisite amount of time for the contingent bonus to vest.

79. Rinehart has not repaid to Union Home the unearned portion of the contingent bonus owed to Union Home.

80. Rinehart has been unjustly enriched by Union Home's payment of the contingent bonus as he has not earned the full amount.

81. Union Home has suffered financial harmed by Rinehart's unjust enrichment.

82. Union Home seeks damages for Rinehart's failure to repay the Bonus in an amount not less than $76,648, and any other relief just and proper in the circumstances.

## PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

83. Paragraphs 1-82 are incorporated herein by reference as if fully restated herein.

84. As a direct and proximate result of Rinehart's conduct, Union Home has suffered, and will continue to suffer, irreparable harm in the loss of business opportunities as well as harm to its goodwill and confidential information in an amount that cannot be fully, completely, and adequately remedied at law.

85. Rinehart has and continues to willfully violate the Agreement through acts which include, but are not limited to taking Union Home's confidential information before ending his employment with Union Home.

86. Without injunctive relief against Rinehart *and all those in active concert or participation with him*, he will continue to harbor Union Home's confidential information, thereby causing Union Home immediate and irreparable harm. In contrast, no harm will accrue to Rinehart by entry of injunctive relief as Rinehart never had the right to violate his obligations to Union Home.

87. Injunctive relief is appropriate because protection and maintenance of Union Home's proprietary information, including its trade secrets, is a vital and legitimate business

concern. In the absence of injunctive relief, it is highly unlikely that Union Home will have the ability to precisely calculate the extent of the harm caused by Rinehart's actions.

88. The public interest will not be harmed if an injunction is granted.

89. Given Rinehart's willful and deliberate violations of his obligations, any bond required to be posted by Union Home should be *de minimis.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Union Home Mortgage respectfully requests that the Court grant the following relief in its favor and against Defendant, Edwin Rinehart:

1. Issue a preliminary and then permanent injunction against Rinehart *and all those in active concert or participation with him* requiring specific performance of the terms and conditions of the Agreement and compliance with the Defend Trade Secrets Act, the Ohio Uniform Trade Secrets Act, and the common law; and

2. Enter judgment in favor of Union Home and against Rinehart for violating the Agreement and order Rinehart to repay Union Home the portion of the Bonus owed to Union Home, totaling at least $76,648;

3. Enter judgment in favor of Union Home and against Rinehart on all counts in an amount to be determined at trial and order Rinehart to pay Union Home's reasonable attorneys' fees as required by paragraph 17 of the Agreement;

4. Enter judgment in favor of Union Home and against Rinehart on all counts in an amount to be determined at trial and order Rinehart to pay damages to Union Home, including, but not limited to, compensatory and punitive damages, costs, and interest as provided for by statute and common law; and

5. Grant all other relief the Court deems just and proper in the circumstances.

Dated: <u>December 10, 2024</u>.

                                              Respectfully submitted,

**BARNES & THORNBURG LLP**

*/s/ Jason Clagg*
Jason Clagg, Ohio Atty. No. 97303
Cody Woods, Ohio Atty. No. 103642
888 S. Harrison St., Suite 600
Fort Wayne, Indiana
Phone: 260-423-9440
Fax: 260-424-8316
jason.clagg@btlaw.com
cwoods@btlaw.com

*Counsel for Plaintiff*